Lindy M. Lauder (#42075069)
CROWLEY FLECK PLLP
101 East Front Street, Ste. 301
P.O. Box 7099
Missoula, MT 59802
Telephone: (406) 523-3600
Facsimile: (406) 523-3636
llauder@crowleyfleck.com
*Attorneys for Oakhurst Opportunity Lending Fund I, LP*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| IN RE:<br><br>RICHARD M. BLOSSER,<br><br>Debtor. | Case No. 2:26-bk-20082-BPH<br><br>**MOTION FOR ORDER CONFIRMING AUTOMATIC STAY DOES NOT APPLY TO REAL PROPERTY OWNED BY A NON-DEBTOR LLC; RESPONSE AND OBJECTION TO DEBTOR'S EXPEDITED MOTION TO EXTEND AUTOMATIC STAY** |

Oakhurst Opportunity Lending Fund I, LP, by and through its attorneys of record, Crowley Fleck PLLP ("Creditor') respectfully moves this Court for an order confirming that the Real Property, as that term is defined herein, is not property of the Debtor's bankruptcy estate and therefore, actions against the Real Property are not subject to the automatic stay. To the extent the Court determines the Real Property is property of the Debtor's estate and is subject to the automatic stay, by this Motion, Creditor responds and objects to Debtor's Expedited Motion to Extend Automatic Stay filed on April 22, 2026, at ECF 22 ("Debtor's Motion"). Creditor respectfully requests the Court to deny Debtor's Motion and to issue an order pursuant to 11 U.S.C. § 362(j) and § 362(c)(3)(A), confirming that the automatic stay terminates thirty (30) days after the Petition was filed in this case. In support of this Motion, Creditor alleges and asserts as follows:

## STATEMENT OF FACTS

### The Loans and Deeds of Trust

Richard M. Blosser and Pamela J. Blosser, Trustees of the Blosser Family Trust dated November 16, 2000 (the "Trust") executed and delivered the following promissory notes to Creditor (together, the "Notes"):

1. That certain Secured Note dated March 17, 2022, in the original principal amount of $10,500,000.00 (together with any change in terms thereto, "Note 1"). A true and correct copy of Note 1 is attached hereto as **Exhibit A** and incorporated herein; and

2. That certain Secured Note dated March 17, 2022, in the original principal amount of $3,750,000.00 (together with any change in terms thereto, "Note 2"). A true and correct copy of Note 2 is attached hereto as **Exhibit B** and incorporated herein.

As security for the Notes, the Trust executed and delivered the following security instruments to Creditor (together, the "Deeds of Trust"):

1. That certain Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement dated March 17, 2022, and recorded March 22, 2022, under Document No. 203546, with the Madison County, Montana Clerk and Recorder (together with any modifications thereto, "Deed of Trust No. 1"). A true and correct copy of Deed of Trust No. 1 is attached hereto as **Exhibit C** and incorporated herein. Deed of Trust No. 1 encumbers Madison County, Montana real property commonly known as 53 Fossil Road, Big Sky, Montana 59716, and more particularly described as follows (the "Real Property"):

    > **LOT 66-A, OF THE FINAL AMENDED PLAT OF YELLOWSTONE MOUNTAIN CLUB SUBDIVISION, PHASES 1, 1A & 2, BEING THE AMENDED PLAT OF LOTS 6, 58-61, 63-66, 69, 70, 72, 73, 76-78, 127, 136-145, 150, 152, 155-157, 199, 255-257, 262, TRACT 1, AND OPEN SPACE "A", AND DELETED LOTS 118, 153 & 154, IN MADISON COUNTY, MONTANA, ACCORDING TO THE OFFICIAL PLAT THEREOF ON FILE AND OF RECORD IN THE OFFICE OF THE COUNTY CLERK AND RECORDER, MADISON COUNTY, MONTANA. (PLAT REFERENCE IN BOOK 4 OF PLATS, PAGE 467, RECORDS OF MADISON COUNTY, MONTANA)**

2. That certain Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement dated March 17, 2022, and recorded March 22, 2022, under

Document No. 203549, with the Madison County, Montana Clerk and Recorder (together with any modifications thereto, "Deed of Trust No. 2"). A true and correct copy of Deed of Trust No. 2 is attached hereto as **Exhibit D** and incorporated herein. Deed of Trust No. 2 encumbers the Real Property.

**Subsequent Transfer of Real Property**

Subsequent to the execution and delivery of the Notes, Deeds of Trust, and related loan documents (collectively, the "Loan Documents"), the Debtor caused the Trust to convey the Real Property to Sanctuary Partners, LLC ("Sanctuary"), via a quitclaim deed recorded January 26, 2023, under Document No. 208343, with the Madison County, Montana Clerk and Recorder. (the "Blosser QCD"). A true and correct copy of the Blosser QCD is attached hereto as **Exhibit E** and incorporated herein.

**Wedbush Trustee's Sale and Debtor's First Bankruptcy Filing**

Wedbush Securities, Inc. ("Wedbush") held a Deed of Trust on the Real Property that was junior and subject to the Creditor's Deeds of Trust, as evidenced by Creditor's Trustee's Sale Guarantee attached hereto as **Exhibit F** and incorporated herein. Due to Debtor's payment defaults under its obligations secured by the Wedbush Deed of Trust, Wedbush recorded a Notice of Trustee's Sale with the Madison County, Montana, Clerk and Recorder on April 17, 2025, as Document No. 219539.

On September 18, 2025, Debtor filed a Chapter 11 Bankruptcy Petition with this Court, initiating Case No. 25-bk-20172-BPH (the "First Bankruptcy Filing"), to stop Wedbush's Trustee's Sale on the Real Property. Shortly thereafter, on September 26, 2026, Debtor filed a Motion to Dismiss, which the Court granted on October 9, 2025. *See* the First Bankruptcy Filing, ECF Nos. 16 and 20. Wedbush subsequently completed its Trustee's Sale on October 17, 2026, wherein Wedbush took the Real Property back with a credit bid, as evidenced by the Trustee's Deed recorded on October 23, 2025, under Document No. 222527 with the Madison County,

Montana Clerk and Recorder, a true and correct copy of which is attached hereto as **Exhibit G** and incorporated herein.

On October 23, 2025, Wedbush quitclaimed the Real Property to Fossil Road Family Group, LLC ("Fossil"), as evidenced by the Quitclaim Deed recorded on October 23, 2025, under Document No. 222532 with the Madison County, Montana Clerk and Recorder and attached hereto as **Exhibit H** and incorporated herein. On November 12, 2025, Fossil conveyed the Real Property back to Sanctuary by virtue of a Special Warranty Deed recorded on November 12, 2025, as Document No. 222910 with the Madison County, Montana Clerk and Recorder, a true and correct copy of which is attached hereto as **Exhibit I** and incorporated herein. Sanctuary is the current record owner of the Real Property.

**Creditor's Non-Judicial Foreclosure Sales**

On November 10, 2025, due to various events of default under the Loan Documents, including, but not limited to, non-payment of amounts due, when due under the Loan Documents, unauthorized transfer of title to the Real Property, and non-payment of real property taxes, Creditor initiated Non-Judicial Foreclosure sales to foreclose on its Deeds of Trust. The Trustee's Sales were initially set for March 12, 2026, at 1:00pm, and 1:30pm at the front entrance to the Madison County Courthouse. True and correct copies of the recorded Notices of Trustee's Sale are attached hereto as **Exhibits J** and **K**, respectively. Creditor subsequently postponed the Trustee's Sales to March 27, 2026, via public proclamation as required under Mont. Code Ann. § 71-1-315(3), based upon Debtor's representations that refinancing of the loans was "imminent."

//

//

**Debtor's Second Bankruptcy Filing**

On March 27, 2026, less than six months after Debtor's First Bankruptcy Filing, Debtor filed a second Chapter 11 Bankruptcy Petition with this Court, initiating this Case (the "Second Bankruptcy Filing"). Due to the Second Bankruptcy Filing, Creditor postponed the March 27, 2026, Trustee's Sales to April 24, 2026, at the same time and place as the original sales were scheduled, all in accordance with Mont. Code Ann. §71-1-315(3). Debtor now seeks to extend the automatic stay that is set to expire on April 27, 2026, by filing a last-minute motion with this Court just days prior to the stay's termination. It is Creditor's position that the automatic stay does not apply to actions against the Real Property because the Real Property is not property of the Debtor's estate. However, even assuming, *arguendo*, that the automatic stay applies actions against the Real Property in this case, Debtor's efforts to extend the automatic stay should fail as a matter of law.

**LEGAL ARGUMENT**

1. ***The LLC's Real Property is not Property of the Debtor's Bankruptcy Estate*.**

The Real Property owned by Sanctuary is not property of the Debtor's bankruptcy estate because the Debtor does not hold a legal or equitable interest in the Real Property. Section 541 of the Bankruptcy Code defines property of the bankruptcy estate. 11 U.S.C. § 541. That section provides that property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "Although the question whether an interest claimed by the debtor is 'property of the estate' is a federal question to be decided by federal law, bankruptcy courts must look to state law to determine whether and to what extent the debtor has any legal or equitable interests in property as of the commencement of the case." *In re First Prot., Inc.*, 440 B.R. 821, 828 (B.A.P. 9th Cir. 2010). State law determines

the nature and extent of a debtor's interest in property, with the bankruptcy estate having no greater rights in property than those held by the debtor prior to bankruptcy. *In re Coupon Clearing Serv.*, 113 F.3d 1091, 1099 (9th Cir. 1997).

Here, the Real Property is currently owned by Sanctuary. Sanctuary is a Wyoming limited liability company. Under Wyoming law, a limited liability company is an entity distinct from its members. Wyo. Stat. Ann. § 17-29-104 (West). This separateness means that the property owned by an LLC is not owned by its individual members. Instead, members typically hold a membership interest in the LLC, which may include economic rights (e.g., the right to distributions) and, in some cases, management rights, depending on the terms of the LLC's operating agreement. *See Mgmt. Nominees v. Skowronska*, 2019 WY 105 (Wyo. 2019); *Lieberman v. Wyoming.com LLC*, 11 P.3d 353, 357 (Wyo. 2000). However, these membership interests are distinct from the LLC's property itself. Indeed, a "Debtor's membership interest in the LLC is personal property and an estate asset." *In re Aylesworth*, 2021 WL 261382, at *4 (Bankr. D. Wyo. Jan. 22, 2021). However, assets owned by an LLC are not property of the estate, and "are only available to the LLC's creditors," and not the individual member's creditors, unless a property action is brought to disregard the entity." *Id*. This legal separation is fundamental: the LLC, not its members, holds title to its property and bears the incidents of ownership.

Here, it is unclear whether Debtor is a member of Sanctuary. To the extent the Debtor has a membership interest in Sanctuary, that membership interest is property of the Debtor's bankruptcy estate. However, as to the Real Property, Sanctuary, and Sanctuary alone, holds title and bears the incidents of ownership of the Real Property. The Debtor does not hold any legal or equitable title to the Real Property. Therefore, the Real Property is not property of the Debtor's

estate in this case. The automatic stay does not apply to actions taken against property that is not property of the bankruptcy estate.

**2. *The Automatic Stay does not Apply to Property that is not Property of the Estate***

As a general rule, the automatic stay protects only the debtor, the debtor's property, or property of the bankruptcy estate. *In re Chugach Forest Prods.*, 23 F.3d 241, 246 (9th Cir. 1994). It does not protect non-debtor parties or their property. *Id.* As outlined above, Creditor holds a security interest in Real Property itself, not in the Debtor's membership interest in Sanctuary. Moreover, the Creditor is only pursuing in rem relief — foreclosure against Sanctuary's Real Property to satisfy the Creditor's liens on that Property. Due to the anti-deficiency provision under Montana Code Annotated Section 71-1-317, the Creditor cannot and will not be pursuing a judgment or deficiency against the Debtor personally to collect on amounts owing to the Creditor. The Real Property is not property of Debtor's bankruptcy estate. It must follow, then, that the automatic stay does not apply to actions against the Real Property, including Creditor's non-judicial foreclosures that are currently scheduled for April 24, 2026.

Based on the foregoing, Creditor respectfully requests a comfort order from this Court confirming that the Real Property is not property of the Debtor's bankruptcy estate and as such, the automatic stay does not apply to actions against the Real Property. A comfort order serves an important practical function. By obtaining an order confirming the automatic stay does not apply to the foreclosure of Sanctuary's Real Property, the Creditor gains clarity and certainty regarding its right to proceed with its state-law foreclosure remedies. This clarity prevents future disputes over whether the creditor has violated the automatic stay and eliminates the risk of sanctions or contempt findings. *See In re Thompson*, No. 22-11921-RMB, 2023 WL 2466435, at *2 (Bankr. W.D. Wis. Mar. 10, 2023) (It is not infrequent for bankruptcy courts to issue "comfort orders"

that the automatic stay does not apply "because they give a party in interest, and perhaps a non-bankruptcy court, comfort that their actions will not violate the automatic stay."). A comfort order confirming that the automatic stay does not apply to foreclosure proceedings against the Real Property will enable the Creditor to move forward with its Trustee's Sales on April 24, 2026, without the risk of sanctions or contempt findings.

Alternatively, to the extent the Court determines the Real Property is property of the Debtor's bankruptcy estate and that the automatic stay applies actions against the Real Property, Creditor respectfully requests the Court to deny Debtor's Motion and to enter an order pursuant to 11 U.S.C. § 362(c)(3)(B) and § 362(j) confirming that the automatic stay terminates on April 27, 2026, which is thirty (30) days after the Second Bankruptcy Filing.[1]

### ***3. <u>The Automatic Stay Terminates Thirty Days After Debtor Filed His Petition</u>***

In the event the Court determines the Real Property is property of the Debtor's estate and the automatic stay applies to actions against the Real Property, this Court should deny Debtor's Motion and confirm the automatic stay terminates on April 27, 2026. Pursuant to 11 U.S.C. § 362(c)(3)(A),

> (3) [I]f a single or joint case is filed by or against debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case, of the debtor was pending within the preceding 1–year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)—
>
> (A) the stay under subsection (a) with respect to any action taken with respect to a debt or property securing debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case.

11 U.S.C. § 362(c)(3)(A) (emphasis added). Section 362(c)(3) was added to the Bankruptcy Code to address the issue of Debtors using successive filings and abusing the power of the

[1] *See* Fed. R. Bankr. P. 9006(a)(5).

automatic stay, seeking only to delay creditor action. *In re Reswick*, 446 B.R. 362, 371 (B.A.P. 9th Cir. 2011). As the Ninth Circuit Bankruptcy Appellate Panel aptly stated: "[f]or many years, successive bankruptcy filings have caused significant problems within the bankruptcy system and for creditors seeking to pursue state law remedies. Abusive debtors file multiple bankruptcy petitions solely to take advantage of the automatic stay." *Id.* Section 362(c)(3) was designed to deter successive filings by imposing stricter limitations on the power of the automatic stay as subsequent bankruptcy cases are filed, such as giving a repeat filer protection of the automatic stay for only 30 days after the petition date. *Id.*

With respect to how the phrase "with respect to the debtor" limits the termination of the automatic stay with respect to any action taken with respect to a debt or property securing debt or with respect to any lease for a repeat filer, there is a circuit split. The Ninth Circuit Bankruptcy Appellate Panel has adopted the minority interpretation and has held that Section 362(c)(3)(A) terminates the automatic stay in its entirety 30 days after the petition date for a repeat filer (i.e. with respect to the debtor, the debtor's property, and property of the estate). *In re Reswick*, 446 B.R. 362, 366 (B.A.P. 9th Cir. 2011).

While 11 U.S.C. § 362(c)(3)(B) provides that a debtor may move for a continuation of the automatic stay past that initial 30-day period of protection, it also specifically states that the court may only extend the stay in particular cases as to any or all creditors "**after notice and a hearing completed before the expiration of the 30-day period**," and "only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed." (emphasis added). Since § 362(c)(3)(B) provides that the stay may be extended only "after notice and a hearing completed before the expiration of the 30-day period," some courts

have denied such motions when they are made only days before the automatic stay is set to expire.

For example, the Bankruptcy Court for the Northern District of West Virginia denied a Debtor's request to extend the automatic stay where the request was filed on the 28th day. *See In re Norman*, 346 B.R. 181 (Bankr. N.D. W. Va. 2006) (request denied because it was filed on the 28th day, too late to hold a hearing before the 30th day). *See also, In re Taylor*, 334 B.R. 660 (Bankr. D. Minn. 2005) (§ 362(c)(3)(B)'s requirement of a motion and a hearing, as defined by § 102(1), requires more than five or even eight days mailed notice; court's local rules required more notice; "Hearing and deciding these motions on their merits [on short notice and not in compliance with the local rules] would have denied due process to all parties that would have been affected by a grant of the relief sought, which is why these motions must be denied."); *In re Ellis*, 339 B.R. 136 (Bankr. E.D. Pa. 2006) (suggesting that counsel should file the application with the petition); *In re Ziolkowski*, 338 B.R. 543 (Bankr. D. Conn. 2006) (after 30 days, the stay is gone unless the hearing has been held; a debtor's counsel must see to scheduling the motion in a timely fashion).

The fact that a motion is filed and hearing requested is not the end of the analysis. The Debtor must also demonstrate "that the filing of the later case is in good faith as to the creditors to be stayed." 11 U.S.C. § 362(c)(3)(B). For purposes of subparagraph (B), a case is presumptively filed in bad faith if there is a presence of *any* of the following events:

(i) as to all creditors, if—

> (I) more than 1 previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was pending within the preceding 1–year period;

> (II) a previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was dismissed within such 1–year period, after the debtor failed to—
>
> > (aa) file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be a substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney);
> >
> > (bb) provide adequate protection as ordered by the court; or
> >
> > (cc) perform the terms of a plan confirmed by the court; or
>
> (III) there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under chapter 7, 11, or 13 or any other reason to conclude that the later case will be concluded—
>
> > (aa) if a case under chapter 7, with a discharge; or
> >
> > (bb) if a case under chapter 11 or 13, with a confirmed plan that will be fully performed; and
>
> ….

11 U.S.C. § 362(c)(3)(C)(i). If the presumption of bad faith arises, the Debtor must rebut the presumption by **clear and convincing evidence to the contrary**. 11 U.S.C. § 362(c)(3)(C) (emphasis added); *In re Montoya*, 342 B.R. 312, 316 (Bankr. S.D. Cal. 2006). The burden of establishing the presence of presumptive bad faith technically rests upon the opponent to the motion. *Id.* However, the absence of an objection does not require the Court to continue the stay. Rather, Section 362(c)(3)(B) explicitly states that a court may continue the stay "**only** if the party in interest [movant] demonstrates that the filing of the later case is in good faith ..." *Id.* (emphasis added). "This necessarily means a court must make its own determination of good faith under the applicable evidentiary standard before it may continue the stay." *Id.*

Consequently, the Debtor's motion must either (1) establish the nonexistence of presumptive bad faith, or (2) admit and rebut the presumption, even though the burden of proof technically rests upon the opponent. *Id.* Where a Debtor establishes the nonexistence of presumptive bad faith, the Debtor must prove by a preponderance of the evidence that the new case was filed in good faith as to the creditors sought to be stayed. 11 U.S.C. § 362(c)(3)(B). As the Bankruptcy Court in *Montoya* pointed out, Section 362(c)(3)(B) does not define good faith for purposes of this determination. However, the concept of what constitutes a bad faith bankruptcy filing is well defined by pre-BAPCPA case law as being a "totality of the circumstances" test. *Montoya* at 317. Because there was minimal guidance from Congress on the topic, the *Montoya* Court elected to follow the reasoning of sister courts that have imported pre-BAPCPA case law into Section 362(c)(3)(B), and utilized a "totality of circumstances" test to assist its determination of whether the Debtor filed her most recent case in good faith as to the creditors she sought to stay. *Id.* (citing other Bankruptcy District Courts that have adopted the totality of circumstances test).

In the Ninth Circuit, to determine whether a debtor has filed a Chapter 11 petition in bad faith, courts have weighed a variety of circumstantial factors, including whether:

(1) the debtor has only one asset;

(2) the debtor has an ongoing business to reorganize;

(3) there are any secured creditors;

(4) the debtor has any cash flow or other sources of income to sustain a plan of reorganization or to make adequate protection payments; and

(5) the case is essentially a two party dispute capable of prompt adjudication in state court.

*In re St. Paul Self Storage Ltd. Partnership*, 185 B.R. 580, 582-83 (9th Cir. BAP 1995). Other factors that have been considered in the Ninth Circuit include, but are not limited to (1) the debtor has only one asset; (2) the secured creditors' lien(s) encumber that asset; (3) there being few, if any, unsecured creditors whose claims are relatively small; (4) existence of allegations of wrongdoing by the debtor; and (5) Bankruptcy offers the only possibility of forestalling loss of the property. *In re Stolrow's Inc.*, 84 B.R. 167, 171 (B.A.P. 9th Cir. 1988). There is no single test to determine bad faith, and the bankruptcy court does not have to consider all of the factors, nor does it have to weigh them equally. *In re Windscheffel*, 2017 WL 1371294, at *4 (B.A.P. 9th Cir. Apr. 3, 2017). A bankruptcy court may find one factor dispositive or may find bad faith even if none of the factors are present. *Id*.

Here, there is no question (as Debtor acknowledges) that Section 362(c)(3)(B) applies to Debtor's Second Bankruptcy Filing. Debtor filed his second petition well within a year of the First Bankruptcy Filing—in fact, it was less than six months after the First Bankruptcy Filing. Thus, the stay automatically terminates 30 days after the Second Bankruptcy Filing, which is April 27, 2026, unless (1) the Debtor timely files a motion to extend the automatic stay; (2) a hearing on Debtor's motion is held before the expiration of the 30 day period; and (3) the Debtor demonstrates the Second Bankruptcy Filing was done in good faith. As outlined above, if any of the conditions of 11 U.S.C. § 362(c)(3)(C)(i) are present, the case is presumed to be filed in bad faith and the Debtor must rebut that presumption by clear and convincing evidence. If none of the Section 362(c)(3)(C)(i) are present, there is no presumption of bad faith and the Debtor must show the case was filed in good faith by a preponderance of the evidence.

Here, the Debtor filed his Motion to extend the automatic stay on April 22, which is two working days prior to the day the automatic stay terminates. While a hearing is set for Friday,

April 24, the Debtor did not provide sufficient notice for Creditors to appear and prepare a meaningful response to the Motion. On that basis, Creditor requests the Court to deny Debtor's Motion. However, even if the Court considers the merits of Debtor's Motion, the Motion should nevertheless be denied because it was filed in bad faith.

The Debtor has engaged in the precise conduct that 11 U.S.C. § 362(c)(3)(A) was enacted to discourage—serial bankruptcy filings to take advantage of the automatic stay for the sole purpose of delaying creditor action. Debtor filed his first Chapter 11 Petition on September 18, 2025, to stop a non-judicial foreclosure of a junior lien on the Real Property. The First Filing was dismissed shortly after filing, on October 9, 2025, apparently facing imminent dismissal by the Court for failing and/or refusing to file his Schedules and meet other filing requirements. Then, on March 27, 2026, less than six months after Debtor filed his First Petition with this Court — and less than fifteen minutes prior to two scheduled Trustees Sales on the Real Property — Debtor filed the Second Bankruptcy Filing with this Court. There is nothing indicating that the Debtor's financial position has changed since the First Bankruptcy Filing, nor is there any indication or evidence to conclude that this Second Bankruptcy Filing will result in a confirmed plan that the Debtor will fully perform under. There is a presumption in this case that it was a bad faith filing. Debtor must provide clear and convincing evidence to rebut that presumption. He has failed to do so.

Debtor has yet to file Schedules with the Court, despite being given an extension, and what is more, it appears that, based on the Trustee's Sale Guarantee attached to this Motion as Exhibit F, Debtor's petition fails to account for a significant amount of debt Debtor owes to Wells Fargo Clearing Services LLC. There is a complete lack of indicia to rebut the presumption that this was a bad faith filing. Debtor's Motion merely concludes that he filed this "Chapter 11

Petition in good faith to prevent foreclosure and preserve the value of a significant real property asset." ECF No. 22, paragraph 2. Such a conclusory statement certainly not clear and convincing evidence the case was not filed in bad faith.

Debtor's late efforts to extend the stay at this stage, with only two weekdays prior to the stay terminating, should fail as a matter of law, as Debtor has failed to demonstrate through clear and convincing evidence that the case was filed in good faith. The Creditor respectfully requests the Court to deny Debtor's Motion and to confirm that the stay terminates on April 27, 2026.

## **Conclusion**

For the foregoing reasons, Creditor respectfully requests the Court to enter an Order confirming that the Real Property is not subject to the automatic stay. In the event the Court determines the Real Property is subject to the automatic stay, Creditor alternatively requests the Court to deny the Debtor's Expedited Motion to Extend Automatic Stay and confirm that the automatic stay terminates on April 27, 2026.

Dated this 23rd day of April, 2026.

CROWLEY FLECK PLLP

By /s/ Lindy M. Lauder
Crowley Fleck PLLP
*Attorneys for Oakhurst Opportunity Lending Fund I, LP*

## NOTICE OF OPPORTUNITY TO RESPOND AND REQUEST A HEARING

If you object to the motion, you must file a written responsive pleading and request a hearing within fourteen (14) days of the date of the motion. The objecting party shall schedule the hearing and shall include in the caption of the responsive pleading in bold and conspicuous print the date, time and location of the hearing by inserting in the caption the following:

**NOTICE OF HEARING**
**Date: ________________**
**Time:________________**
**Location:_____________**

This contested matter shall be scheduled for hearing for the next hearing date scheduled in the division within which the case is filed. The date, time and location of the hearing can be obtained from the Clerk of Court or from the Court's website at www.mtb.uscourt.gov. If the motion indicates the creditor does not consent to waiver of the 30-day rule set forth in 11 U.S.C. § 362(e) and the next scheduled hearing date is thirty (30) days beyond the filing date of the motion for relief, then a preliminary hearing within such thirty (30) day period shall be scheduled by the responding party after such party contacts the Clerk of Court to confirm the preliminary telephone hearing date and time, which shall be set forth in the response.

If you fail to file a written response to the above Motion to Modify Stay with the particularity required by Mont. LBR 4001-1(c), and request a hearing, within fourteen (14) days of the date of this Notice, with service on the undersigned and all parties entitled to service under all applicable rules, then your failure to respond or to request a hearing will be deemed an admission that the motion for relief should be granted without further notice or hearing.

DATED this 23rd day of April, 2026.

CROWLEY FLECK PLLP

By: /s/ *Lindy M. Lauder*
Lindy M. Lauder

## CERTIFICATE OF SERVICE

I, the undersigned, certify under penalty of perjury that on the 23rd day of April, 2026, a copy of the foregoing was served by electronic means, pursuant to Mont. LBR 9013-1(d) on the parties noted in the Court's ECF transmission facilities and/or by mail on the following parties:

**None.**

By /s/ Lindy M. Lauder
Crowley Fleck PLLP
*Attorneys for Oakhurst Opportunity Lending Fund I, LP*