Joseph P. Sakai
Nevada Bar No. 327683
2181 Greenwich Street
San Francisco, CA 94123
Phone: (702) 526-4929
Email: joseph@sakaillp.com

*Attorney for Plaintiff*
*James Freeman*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JAMES FREEMAN, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>RICHARD BLOSSER, an individual; PATHFINDER, LLC, a Montana limited liability company; SANCTUARY PARTNERS, LLC, a Wyoming limited liability company; DOES 1 through 20; and ROE CORPORATIONS 1 through 20, inclusive,<br><br>Defendants. | Case No.: 2:26-cv-00031<br><br>**FIRST AMENDED COMPLAINT** |

Plaintiff James Freeman, through his undersigned counsel of record, complains as follows against Defendants Richard Blosser, Pathfinder, LLC, Sanctuary Partners, LLC, DOES 1 through 20, and ROE Corporations 1 through 20, as follows:

**PARTIES**

1. Plaintiff James Freeman ("Plaintiff" or "Mr. Freeman") is an individual residing in Clark County, Nevada.

2. Defendant Richard Blosser ("Blosser") is an individual residing in Madison County, Montana

3. Defendant Pathfinder, LLC ("Pathfinder") is a Montana limited liability company operating in Gallatin and Madison Counties, Montana, with a principal place of business in Madison County, Montana.

4. Defendant Sanctuary Partners, LLC ("Sanctuary") is a Wyoming limited liability company operating in Gallatin and Madison Counties, Montana, with a principal place of business in Sheridan County, Wyoming.

5. Plaintiff is unaware of the true identity, nature, and capacity of each of the defendants herein designated as DOES 1 through 20, inclusive. On information and belief, each of the defendants designated as a DOE is in some manner responsible for the actions, damages, and injuries alleged in this Complaint. Upon learning of the true identity, nature, and capacity of the DOE defendants, Plaintiff will amend this Complaint to allege their true names and capacities.

6. On information and belief, during all material times herein, Defendant and DOES 1 through 20, and each of them, were and are the agents, alter egos, and/or employees of each of the other defendants; and all allegations herein have been done by said defendant while they were acting in the capacity of agent of the other defendants, all alleged actions of defendants were ratified, acknowledged, and/or authorized by the other defendants, and the acts of each defendant were within the course and scope of their agency and/or employment.

7. Plaintiff is unaware of the true identity, nature, and capacity of each of the defendants herein designated as ROE CORPORATIONS 1 through 20, inclusive. On information and belief, each of the defendants designated as a ROE CORPORATION is in some manner responsible for the actions, damages, and injuries alleged in this Complaint. Upon learning of the true identity, nature, and capacity of the ROE CORPORATION defendants, Plaintiff will amend this Complaint to allege their true names and capacities.

8. On information and belief, during all material times herein, Defendant and ROE CORPORATIONS 1 through 20, and each of them, were and are the agents, alter egos, and/or employees of each of the other defendants; and all allegations herein have been done by said defendant while they were acting in the capacity of agent of the other defendants, all alleged actions of defendants were ratified, acknowledged, and/or authorized by the other defendants, and the acts of each defendant were within the course and scope of their agency and/or employment.

Joseph P. Sakai, Esq.
2181 Greenwich Street
San Francisco, CA 94123

Joseph P. Sakai, Esq.
2181 Greenwich Street
San Francisco, CA 94123

## JURISDICTION AND VENUE

9. This Court has jurisdiction over Plaintiff's claims as the amount in controversy exceeds $75,000.

10. Jurisdiction is premised upon diversity of the parties under 28 U.S.C. § 1332, as Plaintiff is a resident of the State of Nevada and Defendants are residents of the States of Montana and Wyoming.

11. Venue is proper in this Court because Plaintiff suffered damages in the State of Nevada, Plaintiff is a resident of Nevada, and Blosser, Pathfinder and Sanctuary did and continue to conduct business in the State of Nevada via business dealings with Plaintiff.

## FACTUAL ALLEGATIONS

12. Blosser is a wealth management advisor who advertises himself as providing "comprehensive financial counsel to entrepreneurs, affluent families, and successful individuals."[1]

13. Blosser is the founder and managing director of Pathfinder.

14. Upon information and belief, Blosser is the founder, manager, and at all times relevant the principal decision maker for Sanctuary.

15. Blosser and Mr. Freeman are both alumnus of the same university and as a result of that mutual connection were personally acquainted with each other.

16. In or about April 2025, Mr. Freeman contacted Blosser via phone to request guidance on the wealth management sector.

17. Mr. Freeman contacted Blosser to explore potential business opportunities arising out of the wealth management sector related to Mr. Freeman's professional business.

18. Mr. Freeman specifically sought out Blosser to discuss the wealth management sector because Blosser held himself out to Mr. Freeman and the general public as an individual having specific experience with wealth management, a professional working in wealth management, and an overall expert in the area of investment and wealth management.

---

[1] https://rickblosser.com/

Joseph P. Sakai, Esq.
2181 Greenwich Street
San Francisco, CA 94123

19. On May 15, 2025, Blosser pitched Mr. Freeman on an investment opportunity that he represented to Mr. Freeman would yield a 25% profit on an investment of $150,000.00.

20. As an explanation for this high payout, quick turnaround investment, Blosser told Mr. Freeman that he and his wealth management firms had purchased a debt investment with a specialty insurance firm known as Ambac, evidenced by promissory notes, at a twenty-five percent (25%) discount.

21. Blosser explained that he had already located a buyer of the debt at or near face value, guaranteeing an immediate 25% return.

22. Blosser further explained that he needed investors for the final $175,000 tranche of debt.

23. Mr. Freeman was initially hesitant to make the investment.

24. During Blosser's initial pitch, Mr. Freeman explained to Blosser that he had no experience or understanding in the particular space related to the proposed investment and therefore was unable to identify risks.

25. Blosser was undeterred by Mr. Freeman's reluctance, continuing to press for Mr. Freeman to provide a majority, if not the entirety, of the remaining $175,000 Blosser needed.

26. Mr. Freeman also expressed reluctance due to an upcoming need for liquidity.

27. Blosser emphasized the short term nature of the investment, representing to Mr. Freeman that he would receive the entirety of his invested capital and the profit back within 7-10 days.

28. Blosser explained that the guaranteed, short turn around was a result of him having already located a buyer and only needing to perform administrative tasks to close out the investment and obtain the return.

29. In pressuring Mr. Freeman to ignore any hesitance he may have, Blosser described the investment to Mr. Freeman as a "**completely derisked trade.**"

30. Blosser's representations ultimately persuaded Mr. Freeman to agree to the investment.

31. In agreeing to make the investment. Mr. Freeman understood each of Blosser's representations to be true, including the nature of the investment, the quick turn around time, the 25% profit, and the "completely derisked" nature of the trade.

32. Mr. Freeman, trusting the representations that Blosser made regarding the scope of the investment and the promised return, wired $150,000.00, to a bank account held in the name of Sanctuary, at Blosser's direction.

33. Unfortunately for Mr. Freeman, Blosser's representations and promises were all deception.

34. Blosser did not provide a return to Mr. Freeman within 7-10 days after Mr. Freeman's wiring the money to Sanctuary.

35. After he did not receive the promised prompt return of his investment along with the profit, Mr. Freeman began contacting Blosser to request an update and explanation.

36. Rather than providing a return of Mr. Freeman's investment, Blosser only provided excuses as to why Mr. Freeman had not received the promised prompt profit.

37. Mr. Freeman continued to follow up with Blosser and press him for a return of his investment, but Blosser has continued to deflect and ignore Mr. Freeman.

38. After Mr. Freeman realized that Blosser had no intention of returning his initial investment, let alone the promised 25% profit, Mr. Freeman began discussing Blosser with their mutual acquaintances, including alumni from their university.

39. Mr. Freeman's fellow alumni informed him that they had experienced similar issues with Blosser, including Blosser promising substantial returns on investments that never materialized.

40. Those alumni also informed Mr. Freeman that they too had provided Blosser with substantial amounts of money that went unaccounted for.

41. According to information provided by Mr. Freeman's acquaintances that made similar investments with Blosser, on at least 2 occasions amounts those individuals invested with Blosser was only returned after the impacted individuals instituted legal action against Blosser and his related companies.

Joseph P. Sakai, Esq.
2181 Greenwich Street
San Francisco, CA 94123

Joseph P. Sakai, Esq.
2181 Greenwich Street
San Francisco, CA 94123

42. Further digging into Blosser's business dealings revealed additional indiscretions.

43. Of most concern, FINRA has barred Blosser from acting as a broker or otherwise associating with a broker-dealer firm as a result of material indiscretions related to Blosser's sale of his investment firm(s) to another broker.

44. Mr. Freeman made several attempts to obtain the return of his investment capital, including discussing the return directly with Blosser and via attorneys in an informal, non-settlement manner.

45. Those discussions culminated in Blosser's attorney promising to Mr. Freeman's counsel that Blosser would be returning Mr. Freeman's investment during the week of September 1, 2025.

46. Blosser did not return Mr. Freeman's investment during that week.

47. At several points after making the initial investment, Mr. Freeman has advised Blosser that the lack of 7-10 day return of capital and the continued retention of that capital has forced Mr. Freeman into a severe liquidity crunch.

48. This lack of liquidity, which is directly related to and caused by Blosser's failure and/or refusal to uphold his purported 7-10 day investment turnaround, forced Mr. Freeman to sell equities and obtain loans and other financing to provide required liquidity.

49. Blosser told Mr. Freeman that, in addition to returning his investment capital, Blosser and his related companies would compensate Mr. Freeman for all costs and penalties incurred related to the loans and other financing.

50. To date, Blosser has only remitted $30,000.00 of the original investment to Mr. Freeman.

51. As of the date of this Complaint, Blosser, Pathfinder, Sanctuary, and the related Defendants retain $120,000 of Mr. Freeman's money, and all profit accrued thereon, if any, and have refused to compensate Mr. Freeman for all costs and penalties incurred related to Mr. Freeman's obtaining loans and other financing to provide necessary liquidity.

Joseph P. Sakai, Esq.
2181 Greenwich Street
San Francisco, CA 94123

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Breach of Contract
### (Against All Defendants)

52. Plaintiff restates the preceding paragraphs of this Complaint as though fully set forth herein.

53. Defendants entered into an enforceable contract with Plaintiff.

54. Specifically, Defendants offered to Plaintiff that in exchange for a $150,000.00 investment, Defendants would provide Plaintiff, within 7-10 days, a return of the initial investment along with a profit of twenty-five percent (25%) on the investment.

55. Plaintiff agreed to Defendants' offer and in so doing wired $150,000.00 to Sanctuary.

56. Defendants' consideration for the contract was the promise of a return of 25% on Plaintiff's investment.

57. Plaintiff's consideration for the contract was the investment of $150,000.00.

58. Plaintiff fully performed his obligations under the contract – the wiring of the initial investment of $150,000.00 to Sanctuary.

59. Defendants breached the contract by failing and/or refusing to remit to Plaintiff the promised profits on the investment.

60. Defendants also breached the contract by failing and/or refusing to return to Plaintiff his initial investment within 7-10 days.

61. Defendants' breach of the contract continues to the date of the filing of this Complaint because Defendants have not returned Plaintiff's initial investment or provided Plaintiff with any profit on his investment.

62. As a direct and proximate result of Defendants' breach of contract, Plaintiff has been damaged in an amount in excess of one hundred and twenty thousand dollars ($120,000.00).

63. As a result of Defendants' conduct, as set forth herein, Plaintiff has been required to retain the services of an attorney, and, as a direct, natural, and foreseeable consequence thereof, has been damaged thereby, and is entitled to reasonable attorneys' fees and costs.

64. Defendants have acted willfully and maliciously, and with oppression, fraud, or malice, and as a result of Defendants' wrongful conduct, Plaintiff is entitled to an award of exemplary and punitive damages.

**SECOND CAUSE OF ACTION**

**Fraud in the Inducement**
**(Against Blosser, Does 1 through 20; Roe Corporations 1 through 20)**

65. Plaintiff restates the preceding paragraphs of this Complaint as though fully set forth herein.

66. Following their becoming reacquainted, Defendant Blosser made multiple representations to Plaintiff.

67. First, Defendant Blosser represented to Plaintiff that he had a lucrative investment opportunity.

68. Second, Defendant Blosser represented to Plaintiff that the investment opportunity would provide a twenty-five percent return.

69. Third, Defendant Blosser represented to Plaintiff that his initial investment of $150,000.00, along with the twenty-five percent profit on the investment, would be returned to Plaintiff within 7-10 days of Plaintiff wiring the investment funds.

70. Fourth, Defendant Blosser represented to Plaintiff the specific details of the investment, including the allegedly purchased notes, the alleged buyer of the notes, and the guarantee of the return.

71. Defendant Blosser made each of the aforementioned representations to Plaintiff with the intent that Plaintiff rely upon them in making the decision to provide the initial investment.

72. Defendant Blosser's representations were false.

Joseph P. Sakai, Esq.
2181 Greenwich Street
San Francisco, CA 94123

Joseph P. Sakai, Esq.
2181 Greenwich Street
San Francisco, CA 94123

73. Upon information and belief, Defendant Blosser did not have a lucrative investment opportunity for Plaintiff.

74. Upon information and belief, Defendant Blosser's purported investment would not and did not provide a twenty-five percent return.

75. Upon information and belief, Defendant Blosser's purported investment opportunity was not realized by Plaintiff within 7-10 days of his investment.

76. Upon information and belief, Defendant Blosser did not purchase any notes, did not have a buyer for said notes, and had no guarantee of a return on Plaintiff's investment.

77. Plaintiff accepted Defendant Blosser's representations as true.

78. Defendant Blosser's representations induced Plaintiff to act.

79. Defendant Blosser, via his false representations, induced Plaintiff to invest $150,000.00, by wiring that amount to Sanctuary.

80. As a result of Defendant Blosser's false representations, which induced Plaintiff to act, Plaintiff has suffered damages, including the loss of $120,000.00 in investment funds.

81. Defendant Blosser, in fraudulently inducing Plaintiff to agree to the investment, acted willfully and maliciously, and with oppression, fraud, or malice, and as a result of Defendant Blosser's wrongful conduct, Plaintiff is entitled to an award of exemplary and punitive damages.

82. As a result of Defendant Blosser's fraud in the inducement, Plaintiff seeks a judgment against Defendant in the amount of Plaintiff's unreturned initial investment, along with an award of punitive damages in excess of One Hundred and Twenty Thousand Dollars ($120,000.00).

83. As a result of Defendant's conduct, as set forth herein, Plaintiff has been required to retain the services of an attorney, and, as a direct, natural, and foreseeable consequence thereof, has been damaged thereby, and is entitled to reasonable attorneys' fees and costs.

///

///

///

///

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For general damages in excess of $120,000.00;
2. For special damages;
3. For consequential damages;
4. For punitive damages;
5. For reasonable attorneys' fees and costs incurred in filing this action; and,
6. Such other and further relief as this Court may deem just and proper.

Dated: February 23, 2026

*/s/ Joseph P. Sakai*

Joseph P. Sakai, Esq.
2181 Greenwich Street
San Francisco, CA 94123
702-526-4929

*Counsel for Plaintiff*
*James Freeman*

Joseph P. Sakai, Esq.
2181 Greenwich Street
San Francisco, CA 94123

Joseph P. Sakai, Esq.
2181 Greenwich Street
San Francisco, CA 94123