Trent M. Gardner
Cameron T. Clevidence
**GOETZ, GEDDES & GARDNER, P.C.**
35 North Grand Ave.
P.O. Box 6580
Bozeman, MT 59771-6580
Ph: 406-587-0618
Fax: 406-587-5144
Email: tgardner@goetzlawfirm.com
cclevidence@goetzlawfirm.com

Attorneys for Wells Fargo Clearing Services, LLC

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA**

| | |
|---|---|
| In re<br><br>RICHARD M. BLOSSER,<br>Debtor. | Case No. 2:26-BK-20082-BPG<br><br>**STATEMENT OF POSITION OF WELLS FARGO CLEARING SERVICES, LLC IN SUPPORT OF CONVERSION TO CHAPTER 7** |

Wells Fargo Clearing Services, LLC ("Wells Fargo"), pursuant to the Court's Order dated April 30, 2026, respectfully submits this Statement of Position in support of converting the above-entitled case to a case under Chapter 7. Conversion to Chapter 7 is necessary to serve the best interests of the creditors.

The Debtor appears to be in a downward spiral. This is his second bankruptcy—both filed to prevent separate foreclosures on a home in the Yellowstone Club that Debtor asserts is worth up to $40 million. Apart from the foreclosures, Debtor is also facing litigation in Nevada Federal Court asserting fraud related to investments and Wells Fargo domesticated its $10 million plus judgment in Montana and initiated collection proceedings. ECF Nos. 29-1, 29-2. Despite two

bankruptcy filings, creditors still do not have a full picture of Mr. Blosser's assets because he has failed (or refused) to file schedules in either bankruptcy.

Conversion is required. Dismissal of the case would cause a free-for-all that would dissipate assets and result in an unequal recovery for creditors. In contrast, conversion to Chapter 7 would allow the appointment of a Chapter 7 Trustee who could identify, locate and bring all assets into the estate to maximize recovery and provide an even distribution to unsecured creditors.

## BACKGROUND

On September 18, 2025, the Debtor filed his first voluntary petition for relief under the Bankruptcy Code in the United States Bankruptcy Court for the District of Montana. *In re Richard Blosser*, Case No. 2:25-bk-20172-BPH. The Debtor's petition was accompanied by Official Form 101, in which the Debtor estimated that both his assets and liabilities were valued between $0–$50,000. *Id.*, ECF No. 1. The Debtor did not provide a location of residence, instead listing a mailing address only. *Id.* The Debtor also claimed that he requested credit counseling but was unable to obtain the services during the seven days after making the request and exigent circumstances merited a temporary waiver of the requirement. *Id.* Debtor did not attach a certification explaining the efforts he made to obtain credit counseling and what exigent circumstances compelled him to file without fulfilling the credit counseling requirement, and so the Court issued a notice to show cause why the case should not be dismissed. *Id.*, ECF No. 11. The Debtor also failed to file a creditor mailing matrix and schedules despite receiving notice twice by the Court to do so. *Id.*, ECF Nos. 4, 20. The Court ultimately dismissed the case pursuant to 11 U.S.C. § 1112(b)(1) for cause under 11 U.S.C. § 1112(b)(4)(H), noting that "the

outstanding deficiencies are unlikely to be received." *Id.*, ECF No. 20.

On March 27, 2026, the Debtor filed a second voluntary petition for relief under Chapter 11, initiating the instant bankruptcy case. *In re Richard Blosser II*, Case No. 2:26-bk-20082-BPH. The Debtor again estimated his assets and liabilities to both be valued between $0–$50,000. ECF No. 1. The Debtor also once again indicated that he requested credit counseling services but was unable to obtain those services within seven days of his request and that exigent circumstances merited a temporary waiver of the credit counseling requirement. *Id.*

On the same date, the Clerk of Court issued a Deficiency Notice identifying multiple submissions required to cure deficiencies in the Debtor's second Chapter 11 petition. ECF No. 3. The Deficiency Notice explicitly provided that the Debtor was to submit and file these items within fourteen days of the filing date, i.e., by April 10, 2026. *Id.*

The Debtor did not file the required documents within the fourteen-day period established by the Deficiency Notice. Instead, on April 3, the Debtor filed a Motion to Extend Time to File Required Documents. ECF No. 9. That same day, Debtor filed a creditor mailing matrix that omitted multiple of the Debtor's known creditors, including Wells Fargo. *Compare* ECF No. 8 *with* ECF No. 35.

On April 7, the Court issued an Amended Order granting the Debtor's Motion for Extension. ECF No. 15. The Court established a new deadline of April 24 for the Debtor to file all required documents and his credit counseling certification. *Id.* The Court's April 7 order included explicit notice of the consequences of non-compliance, stating that the Debtor shall file all required documents necessary to cure the deficiencies in this case on or before April 24. *Id.* The order made clear that non-compliance with the April 24 deadline would result in dismissal or

conversion. *Id.*

On April 22, the Debtor filed an expedited request to extend the automatic stay, in which the Debtor claimed that he filed this Chapter 11 case to prevent foreclosure on and preserve the value of an undefined "significant real property asset." ECF No. 22. No such asset was listed on either prior Official Form 101, wherein Debtor once again had indicated only a mailing address. ECF No. 1 at 2. The Court set a hearing on this request for April 24. ECF No. 23.

On April 23, Oakhurst Opportunity Lending Fund I, LP ("Oakhurst"), confirmed that the "significant real property asset" is a Yellowstone Club luxury second home located at 53 Fossil Road, Big Sky, Montana (Yellowstone Club Home). ECF No. 24. Oakhurst's motion sought an order declaring that the Yellowstone Club Home is not property of the Debtor's bankruptcy estate or denying Debtor's request to extend the automatic stay so that Oakhurst could complete foreclosure on the property. *Id.*

The Court heard argument and received testimony from the Debtor regarding the Debtor's motion to extend the automatic stay and Oakhurst's motion at the April 24 hearing. *See* ECF No. 26. The Debtor attempted to continue to obfuscate his assets and debts. For example, the Debtor's two Chapter 11 petitions represented that he had assets and liabilities under $50,000. His testimony and exhibits presented at the April 24 hearing, on the other hand, indicated assets of at least $36,000,000. *See* ECF No. 29-4 (Appraisal Report valuing the YC Home at $36 million). Similarly, Debtor initially estimated during the hearing that the total amount of unsecured debt was "a few million," but, when pressed by the Court, suggested the amount of unsecured debt was "like, 11 to 12 million." April 24 Hearing Tr. at 17:17–19:21 (hereinafter, "Tr."). When presented with evidence of additional claims, Debtor misrepresented

the nature of those claims, including by initially suggesting that a $2,980,000 judgment that UBS Financial Services, Inc. ("UBS") possesses against the Debtor was related to a "credit card [he had] with them."[1] Tr. at 33:18–23. The Debtor also assured the Court he had largely completed all the necessary documents to cure the filing deficiencies listed in the Deficiency Notice and could file those documents that same day. Tr. at 11:17–12:05.

The Debtor also explained his plan to repay Oakhurst's loan. The Debtor submitted a Conditional Commitment Letter from Doheney Capital and Investments, LLC, for a Loan Amount of $23,000,000 at an 11.5% interest rate, and 24-month term, and a $920,000 lender fee. ECF No. 29-3. The Debtor would also receive a co-terminus loan of $1,000,000 at a 5% interest rate and a $40,000 lender fee. *Id.*

The Court granted Debtor's motion to extend the automatic stay until May 22, 2026, and, *sua sponte*, the Court granted Debtor additional time to cure the deficiencies. ECF No. 30. The Court required the "Debtor to cure all deficiencies in this case on or before April 29, 2026, or this case may be dismissed or converted pursuant to 11 U.S.C. § 1112(b) after notice and hearing." ECF No. 30 at 3–4.

On April 29, the day of the twice-extended deadline, the Debtor moved for an additional extension of time to file schedules and his statement of affairs until May 15, 2026, and also moved to postpone the meeting of the creditors. ECF No. 37. The Debtor also filed Official Form 104,

[1] The Debtor is well aware that this debt is a loan that became due when Debtor resigned from working with UBS. *See* Richard Blosser Confession of Judgment, attached as Exhibit A; and Judgment, attached as Exhibit B.

which indicated that unsecured creditor claims are at least $29,500,000.[2] ECF No. 35. This updated list continued to omit multiple creditors, which now have submitted proofs of claims.

The Court denied that motion and found cause to dismiss or convert the case from Chapter 11 to Chapter 7 under 11 U.S.C. § 1112(b). ECF No. 38. The Court requested that the creditors submit a brief or other statement of position regarding whether the case should be converted or dismissed. *Id.*

## DISCUSSION

Wells Fargo, as a creditor and party in interest, requests that the Court convert the Debtor's case from Chapter 11 to Chapter 7. The Court has already found cause for dismissal or conversion under 11 U.S.C. § 1112(b), ECF No. 38, and so the remaining inquiry is "which form of relief best serves the creditors' and the estate's interests," *Baroni v. Seror (In re Baroni)*, 36 F.4th 958, 965 (9th Cir. 2022). Here, conversion to Chapter 7 best serves the interests of the creditors and the estate.

### I. Conversion to a Chapter 7 Bankruptcy Is in the Best Interest of the Creditors and the Estate.

Courts have developed the following, non-exhaustive list of factors to evaluate whether conversion or dismissal is in the best interests of the creditors and estate:

(1) whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal;
(2) whether there would be a loss of rights granted in the case if it were dismissed rather than converted;
(3) whether the debtor would simply file a further case upon dismissal;
(4) the ability of the trustee in a chapter 7 case to reach assets for the benefit of the

---

[2] Oakhurst has put forth evidence that its claim against the Debtor is secured, though the Debtor apparently claims otherwise. *See generally* ECF No. 24. Based on the evidence Oakhurst has provided, Wells Fargo will assume for purposes of this brief that its loan is in fact secured.

creditors;

(5) in assessing the interests of the estate, whether conversion or dismissal would maximize the estate's value as an economic enterprise;

(6) whether any remaining issues would be better resolved outside the bankruptcy forum;

(7) whether the estate consists of a single asset;

(8) whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests;

(9) whether a plan had been confirmed and whether any property remains in the estate to be administered; and

(10) whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.

7 Collier on Bankruptcy ¶ 1112.04[7]; *see also In re Trinity Legacy Consortium, LLC*, No. 22-10973-j11, 2025 Bankr. LEXIS 1622, at *13-14 (Bankr. D.N.M. July 7, 2025). The factors strongly weigh in favor of conversion to Chapter 7 here.

**A. Risk of Preferential Payments and Equality of Distribution.**

First, there is substantial risk that some creditors receive preferential payments, and equality of distribution would be better served by conversion. *See In re Premier Golf Props., LP*, 564 B.R. 710, 723 (Bankr. S.D. Cal. 2016). The Debtor has confirmed that he will attempt to make preferential payments should this case be dismissed. During testimony at the April 24 hearing, the Debtor admitted that he is presently being sued by a "friend" for fraud. Tr. at 26:20–28:21. The Debtor claimed that he is in active conversations with his friend's attorney and that the Debtor's immediate "goal is to pay them off." Tr. at 27:10–20. All the while, Debtor has numerous pending claims—including decisive judgments—against him that he is not making any attempt to repay. Similarly, the Debtor has explained in both court filings and during testimony that his purpose of filing bankruptcy was to refinance the Yellowstone Club Home so that he could preserve his possession by repaying only Oakhurst. *See* ECF No. 22 at ¶ 7; Tr. at 9:01–14, 19:24–20:02. Further, because Debtor has not filed his schedules, creditors have no idea whether

Debtor has already made preferential payments to other creditors.

Equality of distribution would also be better served by conversion. "The policy of the bankruptcy law to treat creditors in same classifications equally is central to the Bankruptcy Code." *Rollex Corp. v. Associated Materials (In re Superior Siding & Window)*, 14 F.3d 240, 243 (4th Cir. 1994). If this Chapter 11 proceeding were converted to a Chapter 7, the Chapter 7 trustee, when distributing the estate, would ensure that payment "be made pro rata among claims of the kind specified in each [class of creditor]." 11 U.S.C. § 726(b). On the other hand, under dismissal, the assets of the Debtor would be seized under state law by the first to act. Given the wholesale uncertainty regarding the value of the assets in this estate, the first unsecured creditor or creditors to act could potentially obtain all of the available assets after Oakhurst forecloses on the Yellowstone Club Home. "This scenario is precisely the kind of unequal access to assets which the bankruptcy laws intend to forestall." *In re Superior Siding & Window*, 14 F.3d at 243. That is especially true where, as here, one creditor is prepared, upon dismissal of a Chapter 11 proceeding, to enforce a judgment against property from the Debtor's estate and against the interests of other creditors. *Id.* (citing *In re Gilbert Broadcasting Corp.*, 54 Bankr. 2, 5 (Bankr. D.N.J. 1984)). Here, multiple creditors are prepared to do just that. Distribution under dismissal would come down to who could act most quickly and would deteriorate the estate in the process, whereas conversion would allow for equitable distribution while preserving what assets exist.

Debtor's plan with respect to the Yellowstone Club Home exemplifies the need for conversion. Debtor claims that he is approved for loans totaling $24 million from Doheney Capital Investments, LLC. *See* ECF No. 29-3. These loans carry $960,000 in lender fees and an

11.5% interest rate on the $23 million loan. *Id*. Debtor filed his first bankruptcy because he was delinquent on an approximately $2 million second mortgage. Debtor filed his second bankruptcy because he was delinquent on the approximately $14 million owed to Oakhurst. It is simply not believable that Debtor could service $24 million in debt on the Yellowstone Club Home.

If the bankruptcy case is dismissed, there are two possible outcomes. The first is that Oakhurst proceeds with the foreclosure and all of Debtor's unsecured creditors lose the opportunity to recover from the equity in the Yellowstone Club Home. The second outcome is that Debtor does complete the refinancing, pays off Oakhurst, pockets the remaining funds, and encumbers the Yellowstone Club Home with $24 million in debt which he cannot service. Then, we end up right back in bankruptcy to stop a foreclosure, except millions of dollars in equity in the Yellowstone Club Home will be gone. Neither scenario is in the best interest of creditors. The best interest of creditors is served by conversion and an orderly liquidation by the Trustee.

**B. Loss of Rights If Case Were Dismissed.**

Relatedly, that many of the creditors would lose rights that they currently possess under Bankruptcy Code to a pro rata share of the estate also weighs in favor of conversion to Chapter 7. *See In re Mech. Maint., Inc.*, 128 B.R. 382, 388 (E.D. Pa. 1991) (holding that dismissal was inappropriate where bankruptcy court did not fully consider creditor's distribution rights under the Bankruptcy Code); *In re Gonic Realty Trust*, 909 F.2d 624, 627 (1st Cir. 1990) (stating that one of the main purposes of Bankruptcy Code was to encourage payments to creditors); *In re GPA Technical Consultants, Inc.*, 106 Bankr. 139, 144 (Bankr. S.D. Ohio 1989) ("That creditors have superior rights in bankruptcy . . . is a valid consideration for not dismissing a case."). It does not appear that the Debtor has any intention to pay his additional creditors other than Oakhurst,

based on the deficient filings submitted by Debtor that entirely ignored large creditors, and based on the fact that the equity Debtor seeks—$24,000,000 in loan to Sanctuary Partners, LLC, ECF No. 29-3—is insufficient to pay Debtor's unsecured creditors after paying Oakhurst. *See* ECF No. 35. The Bankruptcy Code therefore provides the best mechanism to protect the Creditors' existing rights.

**C. Whether the Debtor Would File a Further Bankruptcy Case Upon Dismissal.**

Additionally, it appears likely that the Debtor would simply file a further bankruptcy case upon dismissal. The Debtor has expressed obvious intent to abuse bankruptcy to attempt to stave off foreclosure, and, assuming that Debtor were able to pay off Oakhurst by refinancing the Yellowstone Club Home, there would remain at least $13,500,000 in unsecured debt and Debtor would have a mortgage on the Yellowstone Club that he cannot service. Given the Debtor's track record, it is obvious there would be another bankruptcy filing.

Further, other creditors, including Wells Fargo, would continue pursuing Debtor and collection efforts and the Debtor would likely have to file for bankruptcy again to account for his numerous additional creditors' claims. That too favors conversion. *In re Staff Inv. Co.*, 146 B.R. 256, 260 (Bankr. E.D. Cal. 1992).

**D. The Ability of a Chapter 7 Trustee to Reach Assets for the Benefit of the Creditors.**

The ability of the trustee in a Chapter 7 case to reach assets for the benefit of creditors and to maximize the value of the estate also favors conversion. "A chapter 7 trustee has a veritable arsenal of bankruptcy and nonbankruptcy rights." *Id.* at 261. Where, as here, the value of the estate is "unknown and difficult to ascertain" based on the Debtor's representations, allowing a Chapter 7 Trustee to "make that determination and administer the asset[s]

accordingly" serves the best interest of the creditors. *In re Premier Golf Props., LP*, 564 B.R. at 727. There is of course, "the possibility that a chapter 7 trustee could reach other assets on several theories," and, in circumstances in which a Debtor has been using bankruptcy in bad faith, the "trustee's basic bankruptcy avoiding powers may bear fruit." *In re Staff Inv. Co.*, 146 B.R. at 261.

With respect to the Yellowstone Club Home, the Debtor appears to agree that it is property of the Estate and available to pay his creditors. However, Oakhurst claims the home is not property of the Estate. A Chapter 7 Trustee is in the best position to analyze the issue and, if necessary, use the trustee's arsenal of rights to bring the home into the estate.

There is also a strong possibility that there will be other claims for a Chapter 7 Trustee to investigate and pursue. Although we have not seen schedules, Debtor recently testified in his 341 creditors meeting that he makes over $100,000 per month (although he has not filed his 2024 or 2025 tax returns). Given that kind of money, and the value of the assets we are aware of, it appears that there may be avenues for a trustee to pursue to recover funds for creditors.

### E. Whether Conversion or Dismissal Would Maximize the Estate's Value as an Economic Enterprise.

It is also clear that, in assessing the interests of the estate, conversion would best preserve the estate's value as an economic enterprise. If the Court were to grant dismissal, the Debtor has presented evidence that he will repay Oakhurst by incurring a $23,000,000 loan at an 11.5% interest rate, a $1,000,000 loan at a 5% interest rate, along with a $960,000 in lenders fees. ECF No. 29-3. Immediately, the estate would suffer a nearly million-dollar loss in fees so that the Debtor could retain the Yellowstone Club Home. He would only do so temporarily. The likelihood of the Debtor paying off such a loan while also paying his debts to his numerous other

creditors is non-existent.

Ultimately, dismissal would allow the Debtor to mismanage the estate by taking on a loan with unfavorable terms, pay off Oakhurst and pocket the rest of the money, while eliminating or drastically reducing any equity left in the Yellowstone Club Home. When the record before the Court indicates "that removing debtor from the supervision of the bankruptcy court could lead to continued diminution of debtor's assets and therefore, possibly, a reduction in the portion of [] claims that would be satisfied," there would be prejudice to the creditors upon dismissal. *Kates v. Mazzocone (In re Mazzocone)*, 180 B.R. 782, 788 (E.D. Pa. 1995). That, too, favors conversion.

**F. Whether Remaining Issues Would Be Better Resolved Outside of the Bankruptcy Forum.**

In this case, there appear to be no remaining issues that would be better resolved outside of the bankruptcy forum. The Bankruptcy Court is designed to handle exactly these types of situations and ensure an orderly liquidation and distribution, especially when confronted with a sophisticated Debtor who appears to be gaming the system and has been less than forthcoming.

**G. Whether the Estate Consists of a Single Asset.**

Admittedly, the exact number of assets in the Estate are unclear. The Debtor has deliberately obscured information about his assets. However, the Debtor has testified that he, or entities in his control, own at least two pieces of property in Montana—the Yellowstone Club Home and a second house in Bozeman. Because the estate thus consists of multiple significant assets, conversion to Chapter 7 is the more appropriate remedy than dismissal. *Contra In re Woodbrook Assocs.*, 19 F.3d 312, 321 (7th Cir. 1994).

### H. Whether the Debtor Had Engaged in Misconduct and Whether Creditors Are in Need of a Chapter 7 Case to Protect Their Interests.

The Debtor's history of misconduct and the creditors need of a Chapter 7 case to protect their interests also strongly weighs in favor of conversion. As discussed above, the Debtor has engaged in misconduct during the pendency of this Chapter 11 proceeding, in particular with respect to omitting creditors and concealing assets. The Debtor refused to even so much as identify his residence when submitting either of his bankruptcy petitions, omitted known creditors from his creditor mailing matrix to keep them unaware of his bankruptcy filings, and misrepresented his assets and debts on multiple occasions. At this stage, it is not clear what assets and debts the estate possesses, and a Chapter 7 Trustee is needed to sort through and distribute what remains. *See In re Premier Golf Props., LP*, 564 B.R. at 727. Dismissal would allow the Debtor to continue to cloud his assets while many proceedings simultaneously attempt to recover from him separately. Conversion will protect the creditors and the estate.

It is important to note that the Debtor has demonstrated that he is capable of fraud and concealment outside of this matter as well. He admitted to being sued for fraud when testifying before the Court. Tr. at 26:20–28:21. He also was barred from acting as a securities broker by the Financial Industry Regulatory Authority because he refused to testify about his role in purchasing and selling preferred stock and closed-end funds. Financial Industry Regulatory Authority, Letter of Acceptance, Waiver, and Consent, Case No. 2019061442701 (Exhibit C, hereto). The creditors require a Chapter 7 Trustee's management of the estate to protect their interests, and particularly to determine what assets remain in the estate, or can be brought back into the estate, such that they may be distributed to the creditors. *See In re Mazzocone*, 180 B.R. at 788 (including debtor's failure to provide adequate financial records as reason for conversion).

### I. Whether a Plan Had Been Confirmed and Whether Any Property Remains in the Estate to Be Administered.

This last relevant factor also weighs in favor of conversion.[3] Because no plan has been confirmed, no property has revested in the Debtor. *See In re* T.S. Note Co., 140 B.R. 812, 813–14 (Bankr. D. Kan. 1992) (explaining that the property that would be affected by the conversion post-confirmation would be limited because some of the debtor's property would no longer be property of the estate). The property that remains in the estate to be administered would remain in the estate after conversion to be administered under a Chapter 7 case, serving the best interest of the creditors.

In sum, the balance of these factors strongly suggests that conversion to Chapter 7 is in the best interests of the creditors and the estate. There appear to be no factors that favor dismissal, which, for the many reasons stated above, would significantly prejudice the creditors.

## CONCLUSION

For the reasons set forth herein, Wells Fargo respectfully requests that the Court convert this Chapter 11 case to a case under Chapter 7 pursuant to 11 U.S.C. § 1112(b).

DATED this 8th day of May, 2026.

**GOETZ, GEDDES & GARDNER, P.C.**

/s/ Trent M. Gardner
Trent M. Gardner
Cameron T. Clevidence

*Attorneys for Wells Fargo Clearing Services, LLC*

---

[3] The final consideration, whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns, does not prove relevant to the instant case.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies under penalty of perjury that on the 8th day of May, 2026, a copy of the foregoing was served (i) by electronic means pursuant to LBR 9013-1(d)(2) on the parties noted in the Court's ECF transmission facilities and/or (ii) by mail on the following parties:

Richard M. Blosser
1 Yellowstone Club Trail
Big Sky, Montana 59716

/s/ Trent M. Gardner
Trent M. Gardner
Cameron T. Clevidence

*Attorneys for Wells Fargo Clearing Services, LLC*