Trent M. Gardner (Bar No. 7477)
Cameron T. Clevidence (Bar No. 68207702)
**GOETZ, GEDDES & GARDNER, P.C.**
35 North Grand Ave.
P.O. Box 6580
Bozeman, MT 59771-6580
Ph: 406-587-0618
Fax: 406-587-5144
Email: tgardner@goetzlawfirm.com
cclevidence@goetzlawfirm.com

Attorneys for Trustee Darcy M. Crum

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MONTANA**

| | |
|---|---|
| In re<br><br>RICHARD M. BLOSSER,<br>Debtor. | Case No. 2:26-bk-20082-BPH<br><br>**MOTION FOR SUBSTANTIVE CONSOLIDATION** |

Darcy M. Crum, as Chapter 7 Trustee for the bankruptcy estate of Richard M. Blosser (the "Debtor"), respectfully requests that the Court substantively consolidate the Debtor with Pathfinder Wealth Advisors LLC ("Pathfinder") and Sanctuary Partners LLC ("Sanctuary Partners") (collectively, the "Entities") *nunc pro tunc*. Consolidation will avoid unnecessary cost and delay and will allow the Trustee to administer the Debtor's estate and the Entities as the single economic unit that the Debtor and his creditors treated them to be.

The Trustee is serving this motion on all known and discovered creditors of the Entities.[1]

[1] At this time, the Trustee is not aware of any creditors of the Entities that are not also creditors of the Debtor.

**BACKGROUND**

The Debtor possesses ownership of two entities: Pathfinder and Sanctuary Partners. April 24, 2026 Hearing Transcript ("Apr. 24 Tr.") 24:25–25:25 (Exhibit 1). Pathfinder is the Debtor's investment advisory business. Apr. 24 Tr. 25:19–25. The Debtor is the sole member of Pathfinder, a single member LLC registered in the State of California. Pathfinder Operating Agreement at 1–2 (Exhibit 2); Apr. 24 Tr. 36:18-24.

Sanctuary Partners was formed in 2023 for the purpose of owning and holding the Debtor's real property, specifically a house in the Yellowstone Club located at 53 Fossil Rd (the "YC House"). Apr. 24 Tr. 23:18-24:25; Amended and Restated Operating Agreement of Sanctuary Partners LLC ("Am. Sanc. Part. OA"), p. 1 (Exhibit 3). Not long after Sanctuary Partners was formed, the Debtor conveyed 53 Fossil Road in Big Sky, Montana to Sanctuary Partners, via a quitclaim deed for no consideration. ECF No. 24-5; May 11, 2024 Hearing Transcript ("May 11 Tr.") 15:22–16:11 (Exhibit 4). It is unclear who the members were at that time as, so far, the Debtor has failed and refused to produce the original Operating Agreement for Sanctuary Partners. According to the Am. Sanc. Part. OA, Pamela Blosser (Debtor's wife) contributed funds on August 5, 2025, in "exchange for Units in the Company." Ex. 3 at 1. The Debtor has testified repeatedly that Sanctuary Partners does no business and thus has no mechanism to pay its debts outside of the Debtor's contributions and that his wife, Pamela, has no income or employment. May 11 Tr. 15:16–19; 16:18–17:4; 24:5–13. In other words, per Debtor's testimony, he has personally funded all expenses and liabilities for Sanctuary Partners.

## LEGAL STANDARD

Although substantive consolidation is not explicitly codified, Bankruptcy Courts nonetheless retain the power to substantively consolidate bankruptcy proceedings through the court's general equity powers set forth in 11 U.S.C. § 105. *Alexander v. Compton (In re Bonham)*, 229 F.3d 750, 763 (9th Cir. 2000). Substantive consolidation allows bankruptcy courts to disregard separate entities in order to reach assets for the satisfaction of debts of a related corporation. *In re Bonham*, 229 F.3d at 764 (citation omitted). The consolidation creates a single fund from which "all claims against the consolidated debtors are satisfied; duplicate and inter-company claims are extinguished; and, the creditors of the consolidated entities are combined for purposes of voting on reorganization of plans." *Id.* (citing *In re Augie/Restivo Baking Co., Ltd.*, 860 F.2d at 518). "The sole purpose of substantive consolidation is to ensure the equitable treatment of all creditors." *In re Augie/Restivo Baking Co.*, 860 F.2d at 518.

To assess whether substantive consolidation is proper, courts within the Ninth Circuit consider "(1) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit; or (2) whether the affairs of the debtor are so entangled that consolidation will benefit all creditors." *In re Bonham*, 229 F.3d 750, 766 (9th Cir. 2000) (adopting the Second Circuit's two-part test as articulated in *In re Augie/Restivo Baking Co.*, 860 F.2d 515. Here, it is apparent that creditors dealt with Debtor, Sanctuary Partners and Pathfinder as a single economic unit and their affairs as so entangled and intertwined that consolidation will benefit all creditors.

## DISCUSSION

Equitable treatment of all creditors will be facilitated by *nunc pro tunc* consolidation of the

Entities into the bankruptcy proceeding. Creditors have consistently dealt with the Debtor and his entities as interchangeable parts of the same whole when extending credit, and, as the Debtor has repeatedly admitted, the affairs of the Debtor are wholly entangled with the Entities. The Debtor used his personal assets and the Entities' assets interchangeably to service liabilities; creditors treated the Debtor and the Entities as overlapping sources of repayment; and this bankruptcy estate cannot efficiently administer the Debtor's creditor-payment pool without bringing the Entities and their assets into the estate. Consolidation will allow the Trustee to preserve value in the Estate, allow the Trustee to administer the assets that the Debtor himself identified as the source of creditor recovery, and will allow the Trustee to most proactively recover preferential payments and pursue other avoidance and recovery actions. The equities therefore support substantive consolidation of Pathfinder and Sanctuary Partners.

## I. The Debtor and the Entities Commingled Assets and Liabilities, Including Cross-Guarantees of Obligations.

The record demonstrates the Debtor commingled his personal assets and liabilities with those of the Entities. There was commonly no clear demarcation between the affairs of the Debtor and the Entities with respect to their obligations to the Debtor's creditors. The Ninth Circuit has held that substantive consolidation is appropriate in such circumstances. *See Alexander v. Compton (In re Bonham)*, 229 F.3d 750, 767 (9th Cir. 2000) (finding substantive consolidation appropriate because Bonham's actions "commingled her personal assets with those of [her two corporate entities]").

As the Debtor has repeatedly affirmed, his assets and debts are intermingled with the Entities such that they cannot be untangled. The Debtor personally services all of Sanctuary Partners debts and expenses, either through his personal funds, May 11 Tr. 15:16–19; 16:18–17:4;

24:5–13, or by having customers of Pathfinder pay Sanctuary Partners directly. Dkt. 29-1 at 5. To the Trustee's knowledge, Sanctuary Partners does not provide Pathfinder any consideration for these payments.

Given that the Debtor's and Entities' assets are pooled, Creditors have dealt with the Debtor and his entities as a single economic unit. For example, on November 5, 2025, Sanctuary Partners borrowed $1,750,000 from John Kiernan, III, Trustee of the John Kiernan, III Trust Agreement of 2018. *See* Secured Promissory Note (the "Nov. 2025 Note") (Exhibit 5). In seeking this loan, Debtor's personal financial statement listed the YC House located at 53 Fossil Road in Big Sky and the Bozeman home located in Westlake Park as personal property and listed Pathfinder as his asset. *See* Debtor's August 2025 Personal Financial Statement (Exhibit 6). Debtor signed for the loan as a manager of Sanctuary Partners. Ex. 5 at 6. The YC House and the Westlake Park House were both pledged as collateral. *Id.* at 2. In addition, the lender required a personal guarantee from Debtor and his wife. *See* Guaranty Agreement (Exhibit 7).

On January 15, 2026, Kiernan assigned the Nov. 2025 Note and related documents to Big Sky Strategic Holdings, LLC. *See* Assignment of Promissory Note and Beneficial Interest in Deed of Trust, Guaranty Agreement and Loan Agreement (Exhibit 8).

On April 30, 2026, during the pendency of this Bankruptcy,[2] Sanctuary Partners and Richard and Pamela Blosser (as Guarantors) entered into a Modification to Loan Agreement (the "Loan Modification") with Big Sky Strategic Holdings whereby they borrowed an additional

---

[2] Notably, just six days earlier, this Court issued an order affirming that the automatic stay "shall remain in effect as to the Debtor, Debtor's property, and property of the estate ….". ECF No. 30, p. 3.

$1,660,000. *See* Modification of Loan Agreement (Exhibit 9). The stated purpose of the Loan Modification was to reinstate Oakhurst's (the lender in first position on the YC House) deeds of trust and stop pending trustee's sales against 53 Fossil Road. Loan Modification at 2-3. [3]

The Loan Modification was evidenced by a Secured Promissory Note (Exhibit 10) and secured by additional Deeds of Trust against the YC House and Bozeman Home. Ex. 9 at 3. In addition, the Loan Modification required the "unconditional personal guarantees of Guarantors" (Debtor and his wife) and required Pathfinder to execute a Security Agreement providing "all collateral of PATHFINDER WEALTH ADVISORS LLC" as security for the Loan Modification. *Id.* [4]

The Oakhurst loans further demonstrate the mismatch between the nominal borrower and the present holder of the collateral. In March 2022, the Debtor, as trustee of The Blosser Family Trust, borrowed $10,500,000 and $3,750,000 from Oakhurst with both notes secured by 53 Fossil Road. ECF No. 24-1, 24-2. The Debtor also testified that he personally guaranteed the Oakhurst notes. Apr. 24 Tr. 56:25–26:4. But 53 Fossil Road is now held by Sanctuary Partners, while the underlying Oakhurst obligations remain obligations of the Debtor's trust and the Debtor personally. *Id.* at 20:20–21:24. Thus, there too the debt obligation and the secured

---

[3] According to Oakhurst, on the morning of May 8, 2026, Oakhurst "received a wire from Debtor in the amount of $1,682,843.00 to reinstate Debtor's loans with Creditor. Creditor is currently holding the funds in trust given the pending bankruptcy case." ECF No. 48, p. 5. This $1,682,843.00 in funds is property of the Bankruptcy Estate and Trustee is seeking turnover from Oakhurst.

[4] Sanctuary Partners also borrowed $2,213,000 from Arixa Institutional Lending Partners 2A, LLC in July 2025, to purchase the Debtor's personal residence at 456 Westlake Park Boulevard in Bozeman in Sanctury Partners' name. Debtor is identified as a personal guarantor on the Loan. Arixa Loan and Security Agreement, p. 2, ¶ 1.10 (Exhibit 11).

property have been split across the Debtor and Sanctuary Partners.

The Debtor himself admits he treated the Entities' assets as a creditor-payment pool. He testified that 53 Fossil Road is owned by Sanctuary Partners, but that he filed bankruptcy because he was the direct obligor or guarantor on obligations tied to that property and he intended to use that property to repay his creditors. Apr. 24 Tr. 20:20-21:24. The Debtor sought bankruptcy protection because the same pooled assets were at risk. *Id.* At the April 24, 2026, hearing, the Debtor acknowledged his personal bankruptcy filing offered the only possibility of forestalling loss of property owned by Sanctuary Partners because Oakhurst had initiated foreclosure. *Id.* at 19:16-21. He testified 53 Fossil Road is owned by Sanctuary Partners, that the Oakhurst obligations were in the name of the revocable trust, and that he is the direct obligor and direct guarantor. *Id.* at 20:20-21:24. He further testified that a recent appraisal valued 53 Fossil Road at $36 million, that he believed there was substantial equity in the property, and that a proposed $24 million refinancing would pay off lenders and create excess cash to pay **<u>his creditors</u>**. *Id.* at 21:25-23:9. The Debtor has also testified he believes this matter is better suited as a Chapter 11 bankruptcy, or should be dismissed, because he intends to rent the 53 Fossil Road property that is owned by Sanctuary Partners to fund a repayment plan for his creditors. May 11 Tr. 14:24–15:5; 17:1–5; 30:15–20.

The Debtor's other creditors have further demonstrated their understanding that the Debtor and the Entities are not meaningfully separate and have asserted claims against a combination of the Debtor and the Entities or against all three.

For example, one creditor's complaint against Debtor named the Debtor, Pathfinder, and Sanctuary Partners as defendants because the creditor was allegedly defrauded by the Debtor in

his role as Pathfinder's sole member, and Debtor had the creditor pay Sanctuary Partners for the purported investment. *See* First Amended Complaint of James Freeman, ECF No. 29-1.

The proof of claim filed by Tyler Hogan is also particularly instructive. *See* POC #16 (the "Hogan POC"). The Hogan POC attaches a September 10, 2025 "Memorandum of Agreement" identifying Richard Blosser, Pathfinder Wealth Advisors LLC and Sanctuary Partners LLC as the "Borrower-Party". *Id.*, p. 1. The Memorandum of Agreement outlines a loan in the amount of $350,000.00 that is secured by:

a. The YC House;

b. All other assets of Sanctuary Partners;

c. The assets of Pathfinder Wealth Advisors LLC; and

d. The assets of Richard Blosser.

Hogan POC, p. 1. The Memorandum of Agreement also purports to allow the lender to use the YC House for forty (40) days per year. *Id.*, p. 2. The Memorandum of Agreement is signed by Richard Blosser, individually and as the Manager of Pathfinder and Sanctuary Partners. *Id.*, p. 3.

The Hogan POC also attaches a Secured Promissory Note identifying Richard Blosser, Sanctuary Partners and Pathfinder as the "Makers" and which is signed by Richard Blosser, individually and as the Manager of Pathfinder and Sanctuary Partners. Hogan POC, pp. 5-6.

Further, the Debtor's schedules list Oakhurst and Big Sky as guaranty claims against him while also noting that each creditor has a secured deed of trust with Sanctuary Partners. Blosser June 19, 2026, Updated Bankruptcy Schedule A/B at p. 13-14 (Exhibit 12)

The Debtor's individual assets and liabilities are hopelessly entangled and intertwined with those of Sanctuary Partners and Pathfinder. Substantive consolidation is necessary and

required.

## II. Debtor and the Entities Engaged in Transfers Without Consideration or Documentation.

The Debtor and the Entities also engaged in material transfers and pledges among each other that make separate administration impractical. The Debtor testified his revocable trust transferred 53 Fossil Road to Sanctuary Partners in 2023, and the record indicates the transfer was made for no consideration. Apr. 24 Tr. 23:18-24:7; ECF No. 24-5; May 11 Tr. 16:6–8. Sanctuary Partners then used 53 Fossil Road and 456 Westlake Park Boulevard as collateral for entity debts that were personally guaranteed by the Debtor and, in the case of the Big Sky Loan Modification, additionally secured by Pathfinder's collateral. Ex. 11 at 1-3; Ex. 10 at 2. Pathfinder also directed payments from its client to Sanctuary Partners, without any known consideration from Sanctuary Partners. ECF No. 29-1 at 5.

Thus far, Debtor has produced only one bank statement for one month from his personal bank account.[5] Bank of America Statement for Richard Blosser for February 24, 2026, to March 25, 2026 (Exhibit 13). However, that bank statement is extremely instructive. On page 9, the statement shows a wire to Erik Weiland in the amount of $36,000.00. *Id.*, p. 9. At his continued 341 hearing on June 24, 2026, Debtor testified that Erik Weiland is a client of Pathfinder Wealth Advisors.[6] Debtor further testified that the $36,000.00 was the return of a fee previously paid to

---

[5] Trustee and her counsel are diligently working to obtain bank statements from the banks while also attempting to enforce Debtor's obligation to cooperate and produce documents. If Debtor continues to stonewall and obstruct, the Trustee will seek appropriate orders and relief from the Court.

[6] Trustee is in the process of obtaining a transcript of the 341 hearing and will submit it upon receipt.

Pathfinder. This payment of a Pathfinder obligation from Debtor's personal account is emblematic of the fact Debtor treated his personal assets and liabilities and the assets and liabilities of Sanctuary Partners and Pathfinder as one and the same. The statement also reveals multiple transfers of money between Blosser's personal account and the Entities.

Further, on page 4 of the statement, a wire into Blosser's personal account on February 26, 2026, is shown in the amount of $221,410.00. Ex. 13, p. 4. The wire is described as "Loan Proceeds regarding: 53 Fossil Rd. Big Sky, MT." *Id*. This entry coincides with a deed of trust obtained by Christina McKay on the YC House at 53 Fossil Road for a loan in the amount of $270,000.00. *See* Lot Book Guarantee, p. 8, ¶ 15 (Exhibit 14). Thus, the proceeds from a loan secured by the YC House were deposited directly into Debtor's personal account.

These were not arms-length transactions between Debtor, individually, and separate entities. The properties Debtor scheduled as his business-related property were used to secure Sanctuary Partners, Pathfinder and/or personal obligations; the Debtor personally guaranteed all obligations of Sanctuary Partners; Debtor and Pathfinder, the Debtor's investment advisory business, pledged collateral to secure a loan made to Sanctuary Partners for the purpose of stopping foreclosure on 53 Fossil Road; Debtor and Entities took out joint loans (jointly pledging all of their collateral) and Debtor freely intermingled funds between personal accounts and Entity accounts. *See, e.g.,* Ex. 13 at 9–10; Ex. 10 at 2-3; Ex. 11 at 2; Hogan POC; Ex. 14. All while Pathfinder was directing its client to deposit "investment" funds to Sanctuary Partners. Dkt. 29-1 at 5. Substantive consolidation is appropriate when resources are so pooled that they cannot be untangled. *See In re Bonham*, 229 F.3d at 767.

## III. The Creditors Will Benefit from Substantive Consolidation.

The Creditors will benefit from substantive consolidation. Without consolidation, the Trustee would be forced either to administer only the Debtor's membership interests in the Entities or to commence additional proceedings to obtain control over and monetize the Entities' assets. That would likely invite piecemeal foreclosure or litigation over the very assets that the Debtor identified as the source of payment for creditors. The Court recognized at the April 24 hearing that even if the Debtor's valuation of 53 Fossil Road were overstated, it appeared possible that equity remained in the property, and the creditors should have an opportunity to assess "the relative collective value to the entire creditor body of being in a bankruptcy." Apr. 24 Tr. 57:14-58:15; 62:15-25. While the Trustee cannot be certain at this point whether there is such equity remaining in 53 Fossil Road, a trustee-administered sale offers a far better prospect of maximizing that value than a series of competing creditor remedies against nominally separate assets. At minimum, substantive consolidation will confirm that the $1.6 million plus held by Oakhurst is property of the estate. Additionally, even if no equity remains in the 53 Fossil Road property, there is also the benefit of the Trustee being able to more comprehensively address the myriad priority payment issues and avoidance actions that have arisen in this matter, and that are connected to both the Debtor, Pathfinder and Sanctuary Partners.

There is no countervailing prejudice that outweighs those benefits. The secured creditors' liens and other valid security interests can be preserved. It does not appear that any creditors relied on the separateness of Sanctuary Partners or Pathfinder in extending credit—on the contrary, the creditors relied on the opposite. The principal loan documents show cross-collateralization, personal guarantees, and Pathfinder collateral securing Sanctuary Partners'

debt. *See, e.g.*, Ex. 9; Ex. 10 at 2; Hogan POC. The Debtor's unsecured creditors likewise benefit because consolidation gives the estate a practical mechanism to administer the assets the Debtor himself identified as the source of creditor payment.

## IV. *Nunc Pro Tunc* Consolidation Is Appropriate.

The Trustee requests consolidation *nunc pro tunc*. Absent *nunc pro tunc* substantive consolidation, "the trustee would be barred from seeking the avoidance of fraudulent conveyances." *Alexander v. Compton (In re Bonham)*, 229 F.3d 750, 769 (9th Cir. 2000). There appear to be multiple conveyances that occurred during the pendency of this proceeding that involve the Entities. *Nunc pro tunc* consolidation also avoids unnecessary disputes and potential duplicate claims.

Ultimately, retroactivity places creditors in the posture they reasonably expected: claims against the Debtor and Entities will be administered together, duplicative or intercompany claims will be eliminated, and valid liens and security interests will be preserved unless separately challenged or otherwise ordered.

## CONCLUSION

For the reasons stated above, the Trustee respectfully requests that the Court substantively consolidate Pathfinder Wealth Advisors, LLC and Sanctuary Partners LLC into the Debtor's bankruptcy estate, *nunc pro tunc*.

DATED this 16th day of July, 2026.

GOETZ, GEDDES & GARDNER, P.C.

**/s/ Trent M. Gardner**
Trent M. Gardner
Cameron T. Clevidence

***Attorneys for Trustee***

## NOTICE OF OPPORTUNITY TO RESPOND AND REQUEST A HEARING

If you object to the motion, you must file a written responsive pleading and request a hearing within 14 days of the motion's date. The responding party shall schedule the hearing on the motion at least 21 days after the date of the response and request for a hearing and shall include in the caption of the responsive pleading in bold and conspicuous print the date, time, and location of the hearing by inserting in the caption the following:

NOTICE OF HEARING
Date: _______________
Time: _______________
Location: _____________

If no objections are timely filed, the Court may grant the relief requested as a failure to respond by any entity shall be deemed an admission that the relief requested should be granted.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies under penalty of perjury that on the 16th day of July, 2026, a copy of the foregoing was served (i) by electronic means pursuant to LBR 9013-1(d)(2) on the parties noted in the Court's ECF transmission facilities and/or (ii) by mail on the following parties *and* to those listed on the Creditor Mailing Matrix, attached as Exhibit 15:

Richard Blosser
456 Westlake Park Boulevard
Bozeman, Montana 59718

Toyota Financial Services
PO Box 94035
Palatine, IL 60094

Baxter Credit Union
340 N Milwaukee Avenue
Vernon Hills, IL 60061

James Freeman
c/o Joseph Sakai
2181 Greenwich Street
San Francisco, CA 94123

UBS Financial Services
1200 Harbor Blvd, 10th Floor
Weehawken, NJ 07086

Christina McKay
c/o Olympia Financial Mortgage, Inc.
16133 Ventura, Suite 600
Encino, CA 91436

Arixa Institutional Lending Partners 2A, LLC
10960 Willshire Boulevard, Ste. 1050
Los Angeles, CA 90024

John Kiernan III
c/o Eric W. Burkhardt
Beall & Burkhardt, APC
1114 State Street, Ste 200
Santa Barbara, CA 93101

Big Sky Strategic Holdings, LLC
c/o Eric W. Burkhardt
Beall & Burkhardt, APC
1114 State Street, Ste 200
Santa Barbara, CA 93101

Adam Coons
c/o Eric W. Burkhardt
Beall & Burkhardt, APC
1114 State Street, Ste 200
Santa Barbara, CA 93101

**/s/ Trent M. Gardner**
Trent M. Gardner
Cameron T. Clevidence

***Attorneys for Trustee***